RECORDING REQUESTED BY:
OneWest Bank, FSB
2900 Esperanza Crossing Floor 3
Austin TX 78758

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

**U.S. Bank National Association, as Trustee,** 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 hereby constitutes and appoints OneWest Bank, FSB ("Servicer"), a federally chartered savings bank, and in its name, aforesaid Attorney-In-Fact, by and through any officers appointed by the Board of Directors of OneWest Bank, FSB, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (4) below; provided however, that the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements and no power is granted hereunder to take any action that would be adverse to the interests of U.S. Bank National Association. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by U.S. Bank National Association, as Trustee. These Loans are comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security instruments (collectively the "Security Instruments") and the Notes secured thereby.

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by U.S. Bank National Association, as Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, taking deeds in lieu of foreclosure, and foreclosing on the properties under the Security Instruments.

2. Execute and/or file such documents and take such other action as is proper and necessary to defend U.S. Bank National Association, as Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend U.S. Bank National Association, as Trustee.

3. Transact business of any kind regarding the Loans, and obtain an interest therein and/or building thereon, as U.S. Bank National Association, as Trustee's act and deed, to contact for, purchase, receive and take possession and evidence of title in and to the property and/or to secure payment of a promissory note or performance of any obligation or agreement.

4. Execute bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of releases, satisfactions, assignments, loan modification agreements, loan assumption agreements, subordination agreements, property adjustment agreements, and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of U.S. Bank National Association, as Trustee.

5. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

Servicer hereby agrees to indemnify and hold U.S. Bank National Association, as Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the exercise by the Servicer of the powers specifically granted to it under the related servicing agreements. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of U.S. Bank National Association, as Trustee under the related servicing agreements.

Witness my hand and seal this 22nd day of February, 2010.

(SEAL) **NO CORPORATE SEAL**

Witness: Michael D. Bengtson

Witness: Tanveer Ashraf

Attest: Kari Anderson

U. S. Bank National Association as Trustee

By: _____
Charles F. Pedersen    Vice President

By: _____
Becky Warren    Vice President

## ACKNOWLEDGMENT

**State of Minnesota**

**County of Ramsey**

On this 22nd day of February, 2010, before me, the undersigned, a Notary Public in and for said County and State, personally appeared the following officers of U.S. Bank National Association Charles F. Pedersen, Vice President, Becky Warren, Vice President and Kari Anderson, Trust Officer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument on behalf of U.S. Bank National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
Charles L. Martens
Notary Public

My commission expires: 1/31/2012

CHARLES L. MARTENS
NOTARY PUBLIC · MINNESOTA
My Commission Expires Jan. 31, 2012

# ADJUSTABLE RATE NOTE
## (MTA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE. UNLESS YOU MAKE VOLUNTARY
PREPAYMENTS, THERE MAY BE NEGATIVE AMORTIZATION DURING THE LIFE
OF THE LOAN. AS SUCH, THE PRINCIPAL AMOUNT YOU WILL BE REQUIRED TO
REPAY COULD BE GREATER THAN THE AMOUNT YOU ORIGINALLY BORROWED.
THE INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE.

JUNE 14, 2006                    NOVATO              A CALIFORNIA COMPANY
[Date]                          [City]              ALLIANCE[State] hereby certifies this is a true
                                                    and correct copy of the original.
     1400 ALDER CREEK COURT, LINCOLN, CALIFORNIA 95648
                        [Property Address]
                                                    _____
                                                    Authorized Signature

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 720,000.00                    , this amount
is called "Principal"), plus interest, to the order of Lender. The Principal amount may change as provided in this
Note, but will never exceed ONE HUNDRED TEN AND 000/1000                                          percent
(      110.000  %) of the original Principal amount I borrowed. This is called the "Maximum Limit."
Lender is PRO30 FUNDING, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially
pay interest at a yearly rate of        1.000  %. The interest rate I will pay may change.

The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default
described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the  1st  day of AUGUST, 2006                    , and
on that date every month thereafter. Each date on which my interest rate could change is called an "Interest Rate
Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate
may change monthly, but the monthly payment will be recalculated in accordance with Section 3.

### (C) Interest Rate Limit

My interest rate will never be greater than        9.999  %. Beginning with the first Interest Rate Change
Date, my interest rate will never be lower than the Margin (as defined in Section 2(E)).

Exhibit D

**(D) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which will be based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
THREE AND 200/1000                                                      percentage point(s)
(    3.200   %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date.

## 3.  PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the   1st   day of each month beginning on AUGUST 1           ,
  2006       , I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to Interest before Principal. If, on JULY 1, 2036            ,
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 88 ROWLAND WAY, SUITE 200, NOVATO,
CALIFORNIA 94945

                                                    or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first "Payment Change Date" (as defined in Section 3(C)) will be in the amount of U.S. $ 2,315.80                 unless adjusted under Section 3(F) of this Note.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st      day of
AUGUST, 2007           , and on that date every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with Section 3(D) or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due, which causes the Principal balance to increase rather than decrease.)

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least thirty (30) days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate in effect during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless either Section 3(F) or 3(G) below applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than 7.5% of my prior Minimum Payment. This 7.5% limitation is called the "Payment Cap."

DocMagic *eFerms* 800-649-1362
www.docmagic.com

The Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Note Holder may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless either Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

### (E) Additions to My Unpaid Principal

Since my payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my monthly payment could be lesser or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the then current interest rate determined in accordance with Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal may never exceed a maximum amount equal to     110.000 % of the Principal amount I originally borrowed.     My unpaid Principal balance could exceed the Maximum Limit (     110.000 % of my original Principal amount) due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment until the next Payment Change Date. This means that my monthly payment may change more frequently than annually and the payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

### (G) Required Full Payment

Regardless of the Payment Cap limitation described in Section 3(D), on the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

### (H) Payment Options

After the first Interest Rate Change Date, the Note Holder may provide me each month with up to four (4) payment Options, three of which may be greater than the Minimum Payment, and all of which are called "Payment Options." The Payment Options that may be available are:

(1)  **Minimum Payment:** This is the minimum amount Note Holder will accept as my monthly payment. This amount will be provided by Note Holder after the First Interest Rate Change Date and monthly thereafter. The Principal balance will not be decreased by this Payment Option. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the monthly payment is smaller than the interest due and that causes the Principal balance to increase rather than decrease.)

(2)  **Interest Only Payment:** This is the amount that would pay only the interest on the Principal at the current interest rate. The Principal balance will not be decreased by this Payment Option.

(3)  **Fully Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full at the Maturity Date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

Case: 10-45174     Doc# 17-2     Filed: 05/19/10     Entered: 05/19/10 14:51:47     Page 5 of 49

(4)  **15 Year Amortized Payment:**  This is the amount necessary to pay both the Principal and interest in full within a fifteen (15) year term from the first payment due date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

I may use the Payment Options reflected in H.(2) through H.(4) only if they are greater than the Minimum Payment.  If any of these Payment Options results in a payment amount that is less than the Minimum Payment, I must still make the Minimum Payment.

(I)  **Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold the Note Holder responsible for any damages to me which may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 4.   NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to any accrued and unpaid interest before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15     calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be
5.000 % of my overdue payment of Principal and interest.  I will pay this late charge promptly but only once on each late payment.

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 6 of 49

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 7 of 49

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. APPLICABLE LAW

This Note will be governed by federal law and, to the extent not preempted by federal law, by the law of the state in which the real property security is located.

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 8 of 49

WITNESS THE HAND(S) AND SEALS OF THE UNDERSIGNED.

_____ (Seal)
ALDWIN CAYABYAB        -Borrower

_____ (Seal)
LAARNIE CAYABYAB       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the original.

Authorized Signature

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 9 of 49

Recording Requested By:
~~PRO30 FUNDING~~
*Chicago Title*

And After Recording Return To:
PRO30 FUNDING
88 ROWLAND WAY, SUITE 200
NOVATO, CALIFORNIA 94945
Loan Number: 321951

*ALLIANCE TITLE*
*IA40554-009-JSS*

|||||||||||||||||||||||||||||||||||||||||||||||||||||
PLACER, County Recorder
JIM MCCAULEY
**DOC- 2006-0071098**
Acct 38-Alliance Title
Monday, JUL 03, 2006 08:00:00
MIC   $3.00|AUT   $23.00|SBS   $22.00
REC   $25.00|
Ttl Pd   $73.00        Nbr-0001506848
                        gmv/GV/1-23

*124173314-50*
*9-5-06* *84*

——————————— [Space Above This Line For Recording Data] ———————————

"RECORDING REQUESTED BY
ALLIANCE TITLE"

# DEED OF TRUST

MIN: 1001719-0606002989-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated    JUNE 14, 2006         , together with all Riders to this document.
**(B)** "Borrower" is    LAARNIE CAYABYAB AND ALDWIN CAYABYAB, WIFE AND HUSBAND AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is    PRO30 FUNDING

Lender is a    CALIFORNIA CORPORATION                                              organized and existing under the laws of    CALIFORNIA
Lender's address is    88 ROWLAND WAY, SUITE 200, NOVATO, CALIFORNIA 94945

**(D)** "Trustee" is    ALLIANCE TITLE
261 JACKLIN ROAD, MILPITAS, CALIFORNIA 95035

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated    JUNE 14, 2006          .
The Note states that Borrower owes Lender    SEVEN HUNDRED TWENTY THOUSAND AND 00/100                                          Dollars (U.S. $  720,000.00      ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT • MERS
Form 3005 01/01                                    Page 1 of 14                    DocMagic eForms 800-649-1362
                                                                                    www.docmagic.com

*Exhibit C*

*M*

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 10
of 49

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2036 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider      ☐ Biweekly Payment Rider
☐ 1-4 Family Rider      ☐ Second Home Rider
☐ Condominium Rider      [X] Other(s) [specify]
                                        PREPAYMENT RIDER TO SECURITY INST

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01      Page 2 of 14      DocMagic @Ranness 800-649-1362
www.docmagic.com

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 11 of 49

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of PLACER :
[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 329-030-001-000

which currently has the address of    1400 ALDER CREEK COURT
[Street]

LINCOLN                    , California      95648      ("Property Address"):
[City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 12
of 49

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 13
of 49

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 14
of 49

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 16 of 49

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 17
of 49

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 18
of 49

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 19 of 49

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 20
of 49

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 21 of 49

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ALDWIN CAYABYAB                     -Borrower

_____ (Seal)
LAARNIE CAYABYAB                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

Witness:                            Witness:

_____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 13 of 14                     DocMagic eFarms 800-649-1362
                                                                           www.docmagic.com

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 22 of 49

State of California _of_ )
County of ~~PLACER~~ Alameda ) ss.

On _June 15, 2006_ before me, _Edwinna S. Firmeza, notary public_

personally appeared   ALDWIN CAYABYAB, LAARNIE CAYABYAB

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

EDWINNA S. FIRMEZA
Commission # 1614897
Notary Public - California
Alameda County
My Comm. Expires Nov 18, 2009

NOTARY SEAL

_____
NOTARY SIGNATURE

_EDWINNA  S.  FIRMEZA_
(Typed Name of Notary)

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 23
of 49

**SCHEDULE C**
**LEGAL DESCRIPTION**
*exhibit b*

All that certain real property in the City of Lincoln, County of Placer, State of California, described as follows:

Lot 1 as shown on "Final Map No. 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California on March 25, 2002 in Book X of Maps, Page 100.

APN No: 329-030-001-000

# ADJUSTABLE RATE RIDER
## (MTA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS)

THIS ADJUSTABLE RATE RIDER is made this 14th day of JUNE ,
2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to PRO30 FUNDING,
A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 1400 ALDER CREEK COURT, LINCOLN, CALIFORNIA 95648
[Property Address]

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE. UNLESS YOU MAKE
VOLUNTARY PREPAYMENTS, THERE MAY BE NEGATIVE AMORTIZATION
DURING THE LIFE OF THE LOAN. AS SUCH, THE PRINCIPAL AMOUNT YOU
WILL BE REQUIRED TO REPAY COULD BE GREATER THAN THE AMOUNT YOU
ORIGINALLY BORROWED. THE INTEREST RATE CAN NEVER EXCEED THE
LIMIT STATED IN THIS NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**1. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and monthly payments as follows:

**2. INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will
initially pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change.
The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any
default described in Section 7(B) of this Note.
**(B) Interest Rate Change Dates**
The interest rate I will pay may change on the 1st day of AUGUST, 2006 ,
and on that date every month thereafter. Each date on which my interest rate could change is called an
"Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change
Date. The interest rate may change monthly, but the monthly payment will be recalculated in accordance
with Section 3.

---

*DocMagic eRerms 800-649-1362*
*www.docmagic.com*

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 25
of 49

**(C) Interest Rate Limit**

My interest rate will never be greater than 9.999 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin (as defined in Section 2(E)).

**(D) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which will be based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 200/1000 percentage point(s) ( 3.200 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on AUGUST 1, 2006           . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 1, 2036           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 88 ROWLAND WAY, SUITE 200, NOVATO, CALIFORNIA 94945

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first "Payment Change Date" (as defined in Section 3(C)) will be in the amount of U.S. $ 2,315.80          unless adjusted under Section 3(F) of this Note.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of AUGUST, 2007          , and on that date every 12th months thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with Section 3(D) or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due, which causes the Principal balance to increase rather than decrease.)

Case: 10-45174    Doc# 17-2 · Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 26 of 49

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes

At least thirty (30) days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate in effect during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless either Section 3(F) or 3(G) below applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than 7.5% of my prior Minimum Payment. This 7.5% limitation is called the "Payment Cap." The Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Note Holder may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless either Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

(E) Additions to My Unpaid Principal

Since my payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my monthly payment could be lesser or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the then current interest rate determined in accordance with Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

(F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal may never exceed a maximum amount equal to    110.000 % of the Principal amount I originally borrowed. My unpaid Principal balance could exceed the Maximum Limit (    110.000 % of my original Principal amount) due to Minimum Payments and interest rate increases. In that event, on the date that my paying my minimum monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment until the next Payment Change Date. This means that my monthly payment may change more frequently than annually and the payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

(G) Required Full Payment

Regardless of the Payment Cap limitation described in Section 3(D), on the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 27 of 49

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me each month with up to four (4) payment Options, three of which may be greater than the Minimum Payment, and all of which are called "Payment Options." The Payment Options that may be available are:

(1) **Minimum Payment:** This is the minimum amount Note Holder will accept as my monthly payment. This amount will be provided by Note Holder after the First Interest Rate Change Date and monthly thereafter. The Principal balance will not be decreased by this Payment Option. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due and that causes the Principal balance to increase rather than decrease.)

(2) **Interest Only Payment:** This is the amount that would pay only the interest on the Principal at the current interest rate. The Principal balance will not be decreased by this Payment Option.

(3) **Fully Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full at the Maturity Date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

(4) **15 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full within a fifteen (15) year term from the first payment due date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

I may use the Payment Options reflected in H.(2) through H.(4) only if they are greater than the Minimum Payment. If any of these Payment Options results in a payment amount that is less than the Minimum Payment, I must still make the Minimum Payment.

**(I) Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me which may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 28 of 49

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 29
of 49

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
ALDWIN CAYABYAB          -Borrower

_____ (Seal)
LAARNIE CAYABYAB         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

[Sign Original Only]

MULTISTATE ADJUSTABLE RATE RIDER
(MTA - TWELVE MONTH AVERAGE INDEX
PAYMENT CAPS) FORM 83  07/01/05        Page 6 of 6

DocMagic eForms 800-649-1362
www.docmagic.com

# PREPAYMENT RIDER

Loan Number: 321951

Date: JUNE 14, 2006

Borrower(s): ALDWIN CAYABYAB, LAARNIE CAYABYAB

THIS PREPAYMENT RIDER (the "Rider") is made this 14th day of JUNE 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of PRO30 FUNDING, A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

1400 ALDER CREEK COURT, LINCOLN, CALIFORNIA 95648

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 31 of 49

which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)
ALDWIN CAYABYAB      -Borrower

_____ (Seal)
LAARNIE CAYABYAB      -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

23

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDER ON: **February 13, 2008**

AS DOCUMENT NO: **20080009983**

BY: **s/ Lucy McCord**

FIDELITY NATIONAL DEFAULT SOLUTIONS

# *ASSG20070159

ASSG20070159901015

*Space above this line for Recorder's use only*

Trustee Sale No. : 20070159901015      Title Order No.: M723559

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to INDYMAC BANK, F.S.B. all beneficial interest under that certain Deed of Trust dated 06/14/2006, executed by LAARNIE CAYABYAB AND ALDWIN CAYABYAB, as Trustor to ALLIANCE TITLE, Trustee, and Recorded on 07/03/2006 as Instrument No. 2006-0071098 of Official Records in the County Recorder's office of PLACER County, California. Describing land therein: AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated _____ 2/4/08 _____

State of _____ MO _____ }

County of _____ Dakota _____ }

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR LENDER
AND LENDERS SUCCESSORS AND ASSIGNS

_____ Laura Hscott - VP _____

On _____ 2/4/08 _____ before me, _____ Matthew Banaszewski _____,
Notary Public, personally appeared _____ Laura Hscott _____ who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(If signed and notarized in California):

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My commission expires: _____ 1/31/14 _____

CAASGNDOT.rpt - (01/25/08) Ver-12

**Matthew Allan Banaszewski**
**NOTARY PUBLIC - MINNESOTA**
**MY COMMISSION**
**EXPIRES JAN. 31, 2011**

Page 1 of 1

Exhibit D

*10*

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE:   **$9.00**
RECORDED ON:   **September 11, 2009**
AS DOCUMENT NO:   **09-79164**
BY:   **s/ Jon Fischer - T.O. MS**
LSI TITLE COMPANY (CA)

Recording requested by:
LPS Default Title & Closing

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

**\*ASSG20070159**
ASSG20070159901015

Space above this line for Recorder's use only

Trustee Sale No.: 20070159901015      Title Order No.: M723559

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR MARM 2006-OA2 all beneficial interest under that certain Deed of Trust dated 06/14/2006, executed by LAARNIE CAYABYAB AND ALDWIN CAYABYAB, as Trustor to ALLIANCE TITLE, Trustee, and Recorded on 07/03/2006 as Instrument No. 2006-0071098 of Official Records in the County Recorder's office of PLACER County, California. Describing land therein: AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated                                                   INDYMAC BANK, F.S.B.

_____8·24·09_____

                                                        _____
                                                        Dennis Kirkpatrick    Attorney in Fact

State of        **Texas**
County of       **travis**

Before me  **Alex McBride** _____, the undersigned Notary Public, on this day personally
appeared  **Dennis Kirkpatrick**_____, who is the ____Attorney in Fact_____ of INDYMAC BANK, F.S.B., a
corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein
expressed.

Given under my hand and seal of office this 24 day of ___Aug____, 2009.

My Commission Expires:
_11-10-10_____

                                                        _____
                                                        Notary Public Signature

                                                        **Alex McBride**
                                                        Printed Name of Notary Public

ALEX MCBRIDE
Notary Public, State of Texas
(91/25/NB) Commission Expires
November 10, 2010

CAASG

Page 1 of 1

Exhibit E

NAME A  CAYABYAB CONTACT NAME ALDWIN CAYABYAB

---------------------------------------------------------------------------

| | | | | |
|---|---|---|---|---|
| PRINCIPAL BALANCE | 746,681.41 | ----------- RATE CHANGES ---------- | | |
| INTEREST 05/12/10 | 118,029.17 | INT FROM | RATE | AMOUNT |
| PRO RATA MIP/PMI | .00 | 08/01/07 | 5.50000 | 74,979.28 |
| ESCROW ADVANCE | 46,382.79 | 01/01/09 | 5.25000 | 3,266.73 |
| ESCROW BALANCE | .00 | 02/01/09 | 5.00000 | 3,111.17 |
| SUSPENSE BALANCE | .00 | 03/01/09 | 4.87500 | 3,033.39 |
| HUD BALANCE | .00 | 04/01/09 | 4.75000 | 2,955.61 |
| REPLACEMENT RESERVE | .00 | 05/01/09 | 4.62500 | 2,877.83 |
| RESTRICTED ESCROW | .00 | 06/01/09 | 4.50000 | 2,800.06 |
| TOTAL-FEES | 88.00 | 07/01/09 | 4.37500 | 2,722.28 |
| ACCUM LATE CHARGES | 3,474.62 | 08/01/09 | 4.25000 | 2,644.50 |
| ACCUM NSF CHARGES | .00 | 09/01/09 | 4.12500 | 2,566.72 |
| OTHER FEES DUE | 10.50 | 10/01/09 | 4.00000 | 2,488.94 |
| PENALTY INTEREST | .00 | 11/01/09 | 3.87500 | 2,411.16 |
| FLAT/OTHER PENALTY FEE | .00 | TOTAL INTEREST | | 118,029.17 |
| CR LIFE/ORIG FEE RBATE | .00 | TOTAL TO PAYOFF | | 920,666.87 |
| RECOVERABLE BALANCE | 6,000.38 | NUMBER OF COPIES: 1 | PRESS PF1 TO PRINT | |

MULTIPLE IR CHANGE PERIODS CROSSED = CALCULATIONS ARE SUSPECT

---------------------------------------------------------------------------



9339 Carroll Park Drive, Suite 100, San Diego, CA 92121 t 858.909.4300 f 858.909.2900 www.hanqual.com

# Broker Price Opinion™
POWERED BY APPLIED ANALYTICS

## BROKER PRICE OPINION

### Subject Property Information

| | | | |
|---|---|---|---|
| City: | LINCOLN | State/Zip: CA | 95648 |
| Is subject vacant? | Y | If vacant, is subject secured? | Y |
| Subject currently listed? | N | Listed in last 12 months? N | Listing Date: 8/16/2005 Listing Price: $695,000 |

### Neighborhood Information

| | | | |
|---|---|---|---|
| Pride of ownership: | Average | Neighborhood Demand/Supply: | Oversupply |

### Comparable Listings

| Address | | 2232 Torc Mountain Ln | | 714 Mount errigal Pl |
|---|---|---|---|---|
| Days on Market | N/A | 129 | | 31 |
| List Price | | $320,000 | | $355,000 |
| Original List Price | | $320,000 | | $400,000 |
| Distance (miles) | | 0.7 | | 0.95 |
| Site Size (acres) | | 0.21 | | 0.37 |
| View | | No | | No |
| Age | | 4 | | 4 |
| Condition | | Average | | Average |
| Square Footage | | 3464 | | 3863 |
| Bedrooms | | 5 | | 5 |
| Bathrooms | | 4 | | 4 |
| Garage/Pool | | 3 No | | 3 No |
| Basement | | None | | None |

### Comparable Sales

| Address | | 602 Tomies Oakwood Pl | | 2255 Nolen Dr |
|---|---|---|---|---|
| Days on Market | N/A | 162 | | 119 |
| List Price | | $350,000 | | $409,000 |
| Sale Price/Date | | $335,000 10/29/2009 | | $379,000 10/23/2009 |
| Distance (miles) | | 0.63 | | 0.75 |
| Site Size (acres) | | 0.14 | | 0.19 |
| View | | No | | No |
| Age | | 4 | | 4 |
| Condition | | Average | | Average |
| Square Footage | | 3279 | | 3863 |
| Bedrooms | | 5 | | 5 |
| Bathrooms | | 4 | | 4 |
| Garage/Pool | | 3 Yes | | 4 No |
| Basement | | None | | None |

### Broker Comp Comments

### Broker Value Opinion

| | | | |
|---|---|---|---|
| | $285,000 | | $285,000 |
| | $329,900 | | $329,900 |

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 36

# Broker Price Opinion™
POWERED BY APPLIED ANALYTICS

**Additional Broker Comments**



**Comparable Location Map**



**Subject Property Satellite Image**



*LPS BPO*SM offers a value opinion derived from analyses of local market data and subject property information. Comparable market data for the area is provided by a local Real Estate Broker. Information on the subject property is obtained via MLS, county records, personal files, or it may be provided to LPS Applied Analytics by the client. In some cases, information on the subject property may be limited or unavailable. In these instances, the information is provided by the Real Estate Professional's exterior physical inspection of the subject.

1
2  <u>**DECLARATION OF**</u> _____

I, _Jessie Parker_ ___, hereby declare as follows:

3      1.    I am over eighteen (18) years of age and a citizen of the United States of America. I
4  make this Declaration based upon the facts, all of which are within my personal knowledge. If called
5  upon as a witness, I could and would competently testify thereto.

6      2.    I am a real estate broker licensed by the State of California. On or about
7  _12/1/2009_ ___, I conducted a drive-by inspection of the subject property located 1400
8  Alder Creek Court, Lincoln, CA 95648 ("Property") for the purposes of preparing a Broker Price
9  Opinion. Based upon an exterior inspection and a comparison of relevant data and comparable
10 listings, I determined that the market value of the property as of _12/1/2009_ ___ was
11 $329,900.00 if sold as-is.

12     I declare under penalty of perjury under the laws of the United States of America that the
13 foregoing is true and correct.

14 Executed this _2_ day of _April_ ___, 2010 at _Fair Oaks, CA_ .

15
16
17  _Jessie Parker_
18  _Broker Associate_
19
20  _Coldwell Banker_
21
22  _DRE #01435526_
23
24
25
26
27
28

1

TOTAL P.02

Case: 10-45174     Doc# 17-2     Filed: 05/19/10     Entered: 05/19/10 14:51:47     Page 38
of 49

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

FRANCISCA FAJARDO
304 BALTIC SEA CT
PITTSBURG CA 94565

PLACER, County Recorder
JIM MCCAULEY
**DOC-2010-0035316-00**
Friday, MAY 07, 2010 08:54:15

| | | |
|---|---|---|
| | $2.00:SBS | $1.00 |
| MIC | $3.00:AUT | $4.00 |
| ERD | $1.00:RED | $1.00:REC |
| Tti Pd | $12.00 | Rcpt # 0002893369 |
| | | ocg/CG/1-2 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS
## (SHORT FORM)

**This DEED OF TRUST**, made this 25TH of AUGUST 2009, between LAARNIE CAYABYAB, A MARRIED WOMAN herein called TRUSTOR, whose address is 1400 ALDER CREEK CT. LINCOLN, CA 95648

FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and FRANCISCA FAJARDO, herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in LINCOLN, County of PLACER, State of California, described as:

1400 ALDER CREEK CT., LINCOLN, CA 95648

Legal Description:  LOT 1 as shown on "Final Map No., 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California, on March 25, 2002 in Book X of Maps, Page 100.

together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $15,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Alameda County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

1158 (1/94)
Page 1 of 2

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3978 | 874 | Sacramento | 5039 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 109 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 5 Book 1964, Page 149774 | | | | |

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties, and printed on pages 3 and 4 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

LAARNIE CAYABYAB

STATE OF CALIFORNIA *Sacramento* }ss
COUNTY OF _____ *Sacramento* }

On *MAY 6. 2010* before me, personally appeared *SHIRLEY LINNGMAN – NOTARY PUBLIC*
*LAARNIE CAYABYAB*
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature *Shirley Linneman*



(This area for official notarial seal)

1158 (1/94)
Page 2 of

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 40
of 49

RECORDING REQUESTED BY:


WHEN RECORDED MAIL TO:

LILIAN KINGMAN
2857 DUNE CIRCLE
HAYWARD, CA 94545

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS
## (SHORT FORM)

This **DEED OF TRUST**, made this 30TH of November, 2007, between LAARNIE CAYABYAB, A MARRIED WOMAN herein called TRUSTOR, whose address is 1400 ALDER CREEK CT. LINCOLN, CA 95648

FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and LILIAN KINGMAN, herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in LINCOLN, County of PLACER, State of California, described as:

1400 ALDER CREEK CT., LINCOLN, CA 95648
Legal Description:  LOT 1 as shown on "Final Map No., 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California, on March 25, 2002 in Book X of Maps, Page 100.

together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $25,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Alameda County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

## (CONTINUED ON NEXT PAGE)

1158 (1/94)
Page 1 of 4

Exhibit F

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 41
of 49

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|--------|------|------|--------|------|------|--------|------|------|--------|------|------|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5039 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 100 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 5 Book 1964, Page 149774 | | | | |

shall inure to and bind the parties hereto, with respect to the property above described.  Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties, and printed on pages 3 and 4 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

_____
LARRNIE CAYABYAB

STATE OF CALIFORNIA    }
COUNTY OF _____ PLACER ____ }ss

On _____ APRIL  21, 2008 _____ before me,
_____ GLYNN  Q.  SURATOS  , NOTARY PUBLIC _____ personally appeared
_____ LARRNIE  CAYABYAB _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

GLYNN Q. SURATOS
COMM. # 1502987
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Exp. May 27, 2009

(This area for official notarial seal)

(CONTINUED ON NEXT PAGE)

1158 (1/94)
Page 2 of 4

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

JESUSITO TRASMIL
9240 MONTEVERDE LANE
LINCOLN, CA 95648

PLACER, County Recorder
JIM McCAULEY
DOC- 2008-0096255-00
Thursday, OCT 16, 2008 10:14:19
RIC      $6.00|AUT          $1.00
BRD      $2.00|RED     $2.00|REC   $7.00

Ttl Pd  $21.00    Rcpt # 0001821194
ST1/BJ/2-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS
(SHORT FORM)

This **DEED OF TRUST**, made this 30TH of June, 2008, between LAARNIE CAYABYAB, A MARRIED WOMAN herein called TRUSTOR, whose address is 1400 ALDER CREEK CT, LINCOLN, CA 95648

FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and JESUSITO TRASMIL, herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in LINCOLN, County of PLACER, State of California, described as:

1400 ALDER CREEK CT., LINCOLN, CA 95648
Legal Description:  LOT 1 as shown on "Final Map No., 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California, on March 26, 2002 in Book X of Maps, Page 100.

together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $16,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Alameda is mutually agreed that each and all of the terms and provisions set forth in subdivision A, and it County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

**(CONTINUED ON NEXT PAGE)**

1158 (1/94)
Page 1 of 4

Exhibit J.

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|--------|------|------|--------|------|------|--------|------|------|--------|------|------|
| Alameda | 1288 | 666 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 407 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5039 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 100 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4664 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 368 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 5 Book 1964, Page 149774 | | | | | |

shall inure to and bind the parties hereto, with respect to the property above described.  Said agreements, terms and provisions contained in said subdivisions A and B, (Identical in all counties, and printed on pages 3 and 4 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

LAARNIE CAYABYAB

STATE OF CALIFORNIA }
COUNTY OF _____ PLACER _____ }ss

On _____ APRIL 21, 2008 _____ before _____ me,
personally appeared
_____ GLYNN R. SURATOS A NOTARY PUBLIC _____
_____ LAARNIE CAYABYAB _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____

GLYNN R. SURATOS
COMM. # 1592067
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Exp. May 27, 2009

(This area for official notarial seal)

## (CONTINUED ON NEXT PAGE)

1158 (1/94)
Page 2 of 4

RECORDING REQUESTED BY:



PLACER, County Recorder
JIM MCCAULEY
DOC- 2009-0041694-00
Wednesday, MAY 20, 2009 08:45:22
MIC     $6.00|AUT     $3.00|SBR     $1.00
GRD     $2.00|RED     $2.00|REC     $7.00
PEN     $1.00|
Ttl Pd  $22.00          Rcpt # 0001794975
                                ST2/BJ/2-2

WHEN RECORDED MAIL TO:

ANTONIO AGUILAR
639 WHITFIELD LANE
LINCOLN, CA 95648

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (SHORT FORM)

**This DEED OF TRUST,** made this 31ST of July, 2008, between LAARNIE CAYABYAB, A MARRIED WOMAN herein called TRUSTOR, whose address is 1400 ALDER CREEK CT. LINCOLN, CA 95648

FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and ANTONIO AGUILAR, herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in LINCOLN, County of PLACER, State of California, described as:

1400 ALDER CREEK CT., LINCOLN, CA 95648
Legal Description: LOT 1 as shown on "Final Map No., 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California, on March 25, 2002 in Book X of Maps, Page 100.

together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $14,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Alameda County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely;

1158 (1/94)
Page 1 of 2

Exhibit K

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

JULIET MAHINAY
628 CARRINGTON CT
SAN RAMON, CA 94582



PLACER, County Recorder
JIM McCAULEY
DOC- 2009-0050363-00
Check Number 2607
Friday, JUL 24, 2009 08:12:30
MIC $3.00 AUT $1.00 SB2 $0.00
RRD $1.00 RED $1.00 RBC $3.00
LIE $6.00 1
Ttl Pd $15.00 Rcpt # 0001818747
STZ/MD/1-1

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (SHORT FORM)

**This DEED OF TRUST**, made this 10TH of March, 2009, between LAARNIE CAYABYAB, A MARRIED WOMAN herein called TRUSTOR, whose address is 1400 ALDER CREEK CT, LINCOLN, CA 95048

FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and JULIET MAHINAY, herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in LINCOLN, County of PLACER, State of California, described as:

1400 ALDER CREEK CT., LINCOLN, CA 95048
Legal Description: LOT 1 as shown on "Final Map No., 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California, on March 26, 2002 in Book X of Maps, Page 100.

together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $10,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Alameda County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

1158 (3/94)
Page 1 of 2

EXhibit L

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

NATIVIDAD TAMONDONG
29212 MARSHBROOK DR
HAYWARD. CA 94545

PLACER, County Recorder
JIM McCAULEY
DOC- 2009-0042826-00
Wednesday,  JUN 17,  2009 08:55:00
MIC      $6.00|AUT     $4.00|RES     $2.00
ERD      $2.00|RED     $2.00|REC     $8.00
Ttl Pd   $24.00        Rcpt # 0001797558
                                ST2/SM/2-3

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS
## (SHORT FORM)

This DEED OF TRUST, made this 25TH of November, 2008, between LAARNIE CAYABYAB, A MARRIED WOMAN herein called TRUSTOR, whose address is 1400 ALDER CREEK CT. LINCOLN, CA 95648

FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and NATIVIDAD TAMONDONG, herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in LINCOLN, County of PLACER, State of California, described as;

1400 ALDER CREEK CT., LINCOLN, CA 95648
Legal Description:  LOT 1 as shown on "Final Map No., 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California, on March 25, 2002 in Book X of Maps, Page 100.

together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $15,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Alameda County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

1158 (1/94)
Page 1 of 2

Exhibit M

Case: 10-45174    Doc# 17-2    Filed: 05/19/10    Entered: 05/19/10 14:51:47    Page 47
of 49

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

CARY BALUYOT
2599 EASTON LANE #109
SAN JOSE, CA 95133

PLACER County Recorder
JIM McCAULEY
DOC- 2010-0016583-00
Monday, FEB 22, 2010 13:45:42

| nic | $3.00:AUT | $2.00:SB3 | $1.00 |
| ERO | $1.00:RED | $1.00:REC | $4.00 |
| Ttl Pd | $12.00 | Rcpt # 0082015552 | |
| | | | eee/CC/1-2 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (SHORT FORM)

This DEED OF TRUST, made this 30TH of October 2008, between LAARNIE CAYABYAB, A MARRIED WOMAN herein called TRUSTOR, whose address is 1400 ALDER CREEK CT. LINCOLN, CA 95648

FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and CARY BALUYOT, herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in LINCOLN, County of PLACER, State of California, described as:

1400 ALDER CREEK CT., LINCOLN, CA 95648

Legal Description: LOT 1 as shown on "Final Map No., 2002-37 Twelve Bridges Village 8, Unit 1", filed in the Office of the County Recorder of Placer County, California, on March 26, 2002 in Book X of Maps, Page 100.

together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $12,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Alameda County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

1158 (1/94)
Page 1 of 2

Exhibit N

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 558 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5039 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5082 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 5626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 6 Book 1964, Page 149774 | | | |

shall inure to and bind the parties hereto, with respect to the property above described.  Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties, and printed on pages 3 and 4 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

LAARNIE CAYABYAB

STATE OF CALIFORNIA }
COUNTY OF _____ ALAMEDA _____ }ss }

On _____ OCTOBER 31, 2009 _____ before _____ me,
_____ WM. DAVID GRAYNE, NOTARY PUBLIC _____ personally _____ appeared
_____ LAARNIE CAYABYAB _____

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____



(This area for official notarial seal)

WM. DAVID GRAYNE
COMM. 1804090
NOTARY PUBLIC • CALIFORNIA
ALAMEDA COUNTY
My commission expires JUNE 25, 2012

1158 (1/94)
Page 2 of 2

Case: 10-45174   Doc# 17-2   Filed: 05/19/10   Entered: 05/19/10 14:51:47   Page 49
of 49